IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-00422-01-CR-W-DW |
| ) | |
| DEWAYNE JONES, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Jones' Motion to Suppress Evidence and Statements. For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On November 16, 2005, the Grand Jury returned a one count indictment against defendant Dewayne Jones. The indictment charges that on November 8, 2005, defendant Jones knowingly possessed with the intent to distribute fifty grams or more of cocaine base.

On February 7, 2006, an evidentiary hearing on defendant Jones' motion to suppress was held. Defendant Jones was represented by retained counsel Kenton M. Hall. The Government was represented by Special Assistant United States Attorney Matthew P. Wolesky. The Government called Officer Aaron Hendershot, Officer Owen Farris, Sergeant Chris Cesena and Detective Robert Delameter of the Kansas City, Missouri Police Department as witnesses. The defense called no witnesses to testify.

II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On November 8, 2005, an Affidavit/Application for Search Warrant for 7110 S. Flora Avenue, Kansas City, Missouri was presented to Judge Margaret Sauer. (Government's Ex. 1) The Affidavit/Application for Search Warrant, sworn to by Detective Garrik Haynes, provides in part:

    On 04-23-04 a DRAGNET complaint was received regarding narcotic

activity at 7110 S. Flora Avenue, Kansas City, Jackson County, Missouri. The complaint stated Dewayne Jones, black male, 12-21-70 was selling crack cocaine and marijuana from the residence.

On 06-03-05 a DRAGNET complaint was received regarding narcotic activity at 7110 S. Flora Avenue, Kansas City, Jackson County, Missouri. The complaint stated Dewayne Jones, black male, 12-21-71 was selling crack cocaine, marijuana, and pcp from the residence.

On 10-23-05 a Detective with the Kansas City Missouri Police Department, Street Narcotics Unit was contacted by a uniform police officer about narcotic activity at 7110 S. Flora Avenue, Kansas City, Jackson County, Missouri. The officer stated he responded to 7110 S. Flora Avenue on a call for service. The officer stated he made contact with a confidential source while at the residence. The confidential source told the officer Dewayne Jones, b/m, 12-21-70 was a drug dealer. The Confidential source stated Mr. Jones had his cousin "Ron" remove a shoe box filled with a large amount of crack cocaine prior to the officer's arrival. The Confidential source stated Mr. Jones keeps large amounts of powder cocaine at the residence. The officers recovered 1.3 grams of Cocaine Base from the exterior front porch of the residence.

On 11-08-05 at approximately 0730 hours, a Detective with the Kansas City Missouri Police Department, Street Narcotics Unit responded to 7110 S. Flora Avenue, Kansas City, Jackson County, Missouri to recover trash. The Detective recovered two (2) bags of trash that were abandoned on the street curb in front of the residence. The Detective recovered the following items from the trash at 7110 S. Flora Avenue.

1. Mail addressed to Dewayne Jones, 7110 S. Flora Avenue, Kansas City, Missouri 64131.

2. Mail addressed to Derick Johnson, 7110 S. Flora Avenue, Kansas City, Missouri 64131.

3. Mail addressed to 7110 S. Flora Avenue, Kansas City, Missouri 64131.

4. Three (3) Arm & Hammer pure baking soda empty boxes.

5. Three (3) Optimo, Cigarillo, Peach empty cigar boxes containing loose tobacco, which is consistent with the hollowing out of cigars and rolling a marijuana blunt.

6. Four (4) large Zip-Lock bags that have been wash out, which is consistent with the packaging of illegal narcotics.

7. One (1) 8x10 clear heat sealed bag with a torn end, wrapped in Premier 10mm pipe wrap, containing a dryer sheet in one end of the bag, this is consistent with the packaging of illegal narcotics.

2

8. Eleven (11) clear plastic baggies with torn corners, which is consistent with the packaging of illegal narcotics.

9. Five (5) 8x10 clear "Food Saver" heat sealed bags with torn ends, which is consistent with the packaging of illegal narcotics.

10. Green Leafy substance weighing approximately 0.1 gram.

11. Two (2) large "Zip-Lock" bags containing a white residue, which is consistent with the packaging of illegal narcotics.

12. Eight (8) clear plastic baggies containing a white residue, which is consistent wit the packaging of illegal narcotics.

13. One (1) large "Zip-Lock" bag that has partially been washed out, containing a white residue, which is consistent with trying to destroy evidence related to narcotic trafficking

14. One (1) small "Zip-Lock" bag containing a white residue, which is consistent with the packaging of illegal narcotics.

The green leafy substance, weighing approximately 0.1 grams was field-tested utilizing the Duquenois-Levine Reagent System Test Kit. The substance showed a positive reaction to the presence of THC, the active ingredient in marijuana.

The white residue was field-tested utilizing the Scott Reagent System Test Kit. The substance tested positive to the presence of cocaine. During an examination of the recovered evidence it is apparent to the Affiant that the resident of 7110 S. Flora Avenue, Kansas City, Jackson County, Missouri are involved in narcotics trafficking.

**A no-knock search warrant is being requested due to the following facts:**

On 04-23-04 a DRAGNET complaint was received regarding narcotic activity at 7110 S. Flora Avenue. The complaint stated Dewayne Jones, black male, 12-21-71 was selling crack cocaine and marijuana from the residence the complaint stated Mr. Jones had weapons inside the residence.

A computer check of Dewayne Jones, black male, 12-21-70 responded back with an address of 7110 S. Flora Avenue, as current as 08-09-05. Mr. Jones is flagged through the computer system as being a violent offender. Mr. Jones was charged with Aggravated Domestic Violence Assault on 04-04-04.

It seems probable that the occupants of the residence could pose a threat to officer entering the residence, upon execution of the search warrant. Past experience related to narcotics investigations have revealed that small quantities of narcotics can be easily disposed of prior to law enforcement officers entering the residence to execute search warrants.

(Government's Ex. 1)

2. Judge Sauer signed the Search Warrant on November 8, 2005, at 6:13 p.m. (Government's Ex. 2) The Search Warrant authorized the officers to seize the following:

> Cocaine, a Schedule II Controlled Substance;
>
> Marijuana, a Schedule I Controlled Substance;
>
> Any firearms;
>
> U.S. Currency, in close proximity to narcotics;
>
> Narcotics paraphernalia and any items used in the preparation, packaging and distribution of Cocaine and Marijuana;
>
> Any papers, correspondence or documents related to drug trafficking and/or the disposition of moneys which evidence the proceeds from the illicit trafficking of drugs;
>
> Indicia of occupancy, residency, ownership, management and/or control of the premises described above including, but not limited to utility and telephone bills, canceled envelopes and keys;

(Government's Ex. 2)

3. Officer Aaron Hendershot was part of the tactical unit that executed the search warrant at 7110 South Flora, Kansas City, Missouri, on November 8, 2005. (Tr. at 3) Given that it was a no-knock search warrant, the officers would have gone to the front door, would have knocked and announced, "Police, search warrant," and then would have struck the door with a ram forcing it open. (Tr. at 14, 34) The officers would not have requested permission to enter or waited any period of time to see if there would be a response from inside the residence. (Tr. at 15, 34) The tactical unit had their weapons drawn when entry was effected into the residence. (Tr. at 13, 16, 34)

4. Officer Owen Farris was also part of the tactical unit that executed the search warrant at 7110 South Flora on November 8, 2005. (Tr. at 23) Officer Farris testified that prior to the execution of the warrant, he was present for a briefing during which Dewayne Jones was identified as an individual with an active warrant, i.e. a Kansas City bench warrant, who might be present at the residence. (Tr. at 23)

5. Sergeant Chris Cesena was the supervisor on the scene for the execution of the search warrant at 7110 South Flora on November 8, 2005. (Tr. at 50)

6. The officers discovered two adults inside the residence, Dewayne Jones and Lakisha Burton, and two small children. (Tr. at 19) Jones and Burton were in the front living room and the children were in a back bedroom. (Tr. at 34-35) Jones was placed in handcuffs right away upon entry and detained. (Tr. at 21, 25) Jones was also frisked for weapons. (Tr. at 48) Officer Hendershot testified that Jones was calm, collected and extremely cooperative. (Tr. at 19) He did everything that was asked of him and he was not a problem at all. (Tr. at 19)

4

7. After the residence was secured, Officer Farris took Dewayne Jones, Lakisha Burton and the two children out on the front porch and stood with them while the residence was being searched. (Tr. at 25) Burton was not handcuffed and the children were sitting on her lap. (Tr. at 43-44) Officer Farris observed three vehicles in the driveway. (Tr. at 26) The search warrant did not authorize searches of any vehicles. (Tr. at 35) Officer Farris asked Jones who the vehicles belonged to and Jones replied that they were his. (Tr. at 26) Officer Farris then asked Jones if he would mind if the officers searched the vehicles and Jones responded that he did not care and gave his verbal consent to do so. (Tr. at 26) Officer Farris did not ask Jones to sign a consent to search form nor did Officer Farris tell Jones that he could refuse to give consent. (Tr. at 42-43) Officer Farris and Sergeant Cesena both testified that they did not believe Jones to be under the influence of alcohol or drugs. (Tr. at 27, 52-53) Officer Farris testified that both Jones and Burton were very cooperative through the entire execution of the search warrant. (Tr. at 27-28) Sergeant Cesena also described Jones as very calm and very cooperative. (Tr. at 51)

8. After Dewayne Jones gave his consent to search the vehicles, the officers discovered that the green Lexus was locked. (Tr. at 28) Officer Farris asked Jones where the keys would be and Jones replied that they were inside on the living room floor next to the couch. (Tr. at 28) Officer Farris yelled to officers inside the residence to ask if anybody saw some keys and they said there were some laying on the floor next to a couch. (Tr. at 28) The officers handed the keys to Officer Farris. (Tr. at 28) Officer Farris showed the keys to Jones and Jones said those are the keys. (Tr. at 28) Jones then showed Officer Farris how to deactivate the alarm on the car so that Farris would not set the alarm off. (Tr. at 28) At no point did Jones tell Officer Farris that he did not want him to go into the vehicle. (Tr. at 28-29) Sergeant Cesena also testified that Jones did not object in any way to the search of the vehicle. (Tr. at 53) At no point did Officer Farris make any promises to Jones in exchange for his cooperation. (Tr. at 29) Sergeant Cesena also testified that he made no promises to Jones. (Tr. at 64-65) At no point did Officer Farris (or any other officer) threaten Jones to make him cooperate. (Tr. at 29)

9. A canine unit had gone through the house. (Tr. at 29-30) Officer Farris explained to Dewayne Jones that the dog was going to go into the car. (Tr. at 30) The dog alerted to the center arm console of the Lexus. (Tr. at 30) Officer Farris then opened up the center console and located two bags, each containing a beige rock substance which field tested positive for the presence of cocaine. (Tr. at 30) All three vehicles were searched with the dog, but contraband was only recovered from the Lexus. (Tr. at 42)

10. Officer Farris testified that if Dewayne Jones had told him that he did not want the officers to search his car, the undercover sergeant in charge would have been notified and he most likely would have applied for a search warrant for the vehicle. (Tr. at 30-31) Officers would have stayed with the vehicle until the search warrant application was granted or denied. (Tr. at 31)

11. Once the residence was secured, Officer Hendershot searched the kitchen. (Tr. at 5) Sergeant Cesena pointed out to Officer Hendershot that there were Pyrex containers by the microwave and sandwich baggies out in the open. (Tr. at 6) Officer Hendershot testified that this is common in a lab used to manufacture crack cocaine. (Tr. at 6) Officer Hendershot discovered a brown paper bag in a cabinet inside of which was a heat-sealed plastic bag containing a white rock substance which field

5

tested positive for the presence of cocaine. (Tr. at 6-7) Officer Hendershot next discovered a clear plastic bag hidden in the bottom of a Cocoa Pebbles cereal box containing a beige rock-like substance which field tested positive for the presence of cocaine and a clear plastic bag hidden in a four-pack of baby food jars containing a beige rock-like substance which field tested positive for the presence of cocaine. (Tr. at 7-8) Also discovered in the kitchen was a box containing 36 live rounds of .9 mm ammunition which was found behind the microwave and two scales with white powdery residue which were found on top of the kitchen cabinets. (Tr. at 8-9)

12. Officer Farris searched Dewayne Jones' person after Jones was placed under arrest for the active warrant and for possession of controlled substances which were discovered within the residence. (Tr. at 25) Jones was searched prior to being transported. (Tr. at 25-26) As Officer Farris started to search Jones, Jones advised that he had a bag of marijuana in his pocket. (Tr. at 26) Officer Farris had not asked Jones if he had anything on his person. (Tr. at 37-38) Officer Farris located a clear plastic bag containing three grams of marijuana in Jones' right front pants pocket and $1,335 in cash in his left rear pants pocket. (Tr. at 26) Officer Farris did not ask Jones where he had gotten the money. (Tr. at 39)

13. The Return/Receipt for Search Warrant lists the following property as having been seized on November 8, 2005:

   1. BEIGE ROCK SUBSTANCE

   2. WHITE POWDER SUBSTANCE

   3. $1,335.00 IN U.S. CURRENCY–FROM DWAYNE [sic] JONES 12/21/70

   4. 2 ELECTRONIC SCALES

   5. CERIAL [sic] BOX

   6. MISC PAPERWORK

   7. 36 "WOLF" 9mm LIVE AMMUNITION

   8. 2 PYREX CUPS

   9. GLAD PLASTIC BAGS

   (Government's Ex. 3)

14. Officer Farris testified that he did not advise Dewayne Jones of his Miranda rights because the tactical team does not Mirandize people out in the field. (Tr. at 38) It was not Officer Farris' responsibility to interrogate Jones. (Tr. at 44-45)

15. At 8:46 a.m. on November 9, 2005, Detective Robert Delameter checked Dewayne Jones out of the Detention Unit of Police Headquarters and took him to an interview room. (Tr. at 73) Detective Delameter provided a Miranda waiver form to Jones and asked him to read the first paragraph out loud. (Tr. at 73) Detective Delameter asked Jones to sign the waiver form if he understood it. (Tr. at 73-74) Jones signed the

waiver form and stated that he understood his rights. (Tr. at 74) The Miranda Waiver signed by Jones provides:

> Before being asked any questions, I have been told of my right to remain silent, that anything I say can and will be used against me in court, that I have the right to talk with a lawyer and to have the lawyer with me during questioning. I have been told that if I cannot afford a lawyer that one will be appointed for me, at no cost to me, before I am questioned. I have also been told that I can stop talking at any time.
>
> **I understand all of these rights and I am willing to talk to you.**
>
> x *Dewayne Jones Sr.*
> Signature of Person Being Questioned
>
> 11-9-05                              0850
> Date and Time Warning Given
>
> 11-9-05                              0851
> Date and Time Waiver Signed

(Government's Ex. 4)

16. Defendant Jones told Detective Delameter that he uses crack cocaine, marijuana and PCP on a regular basis. (Tr. at 75-76) Jones denied that he sold narcotics. (Tr. at 76) Jones refused to say where he bought his narcotics. (Tr. at 76) Jones admitted to knowing about the cocaine found on the table in a brown bag and the marijuana found on his person, but he denied any knowledge of the crack cocaine in the cereal box or the crack cocaine that was found in the Lexus. (Tr. at 76) Jones denied knowing about the ammunition found in the residence. (Tr. at 76) Jones said the scales found in the residence did not work. (Tr. at 76) When asked about the crack cocaine found in the Lexus, Jones stated that he had not been driving the Lexus due to it having a flat tire. (Tr. at 76) When asked about the money which was found, Jones stated that he had won $6,500 at Harrah's Casino three months earlier and the $1,335 that the police took from him was some of that money. (Tr. at 76) Jones also stated that he worked at Ace Graphics as a printer and that some of the money was from his paychecks. (Tr. at 76) The interview lasted approximately 39 minutes. (Tr. at 76-77)

17. The Government offered certified records of defendant Jones' convictions for violation of an adult abuse order, for trafficking narcotics and for sale of a controlled substance to show Jones' experience in the criminal justice field. (Tr. at 78; Government's Exs. 5, 6 and 7)

III. DISCUSSION

Defendant Jones seeks to suppress evidence seized from the residence located at 7110 South Flora, from the 1994 Lexus vehicle parked in the driveway of the residence and from the person of defendant. (Motion to Suppress Evidence and Statements at 1) Defendant further seeks to suppress

7

any statements made by defendant following his arrest. (Id.) In support of his motion, defendant argues that the affidavit in support of the search warrant failed to state facts that would support a finding of probable cause or the application of the good faith exception. (Id. at 2) Defendant further argues that the search of his person was incident to an arrest based upon items seized during the unlawful search of the premises so the items seized from defendant's person should be suppressed because the arrest was tainted by the unlawful search. (Id.) Defendant also denies that he voluntarily consented to a search of the 1994 Lexus. (Id.) Finally, defendant argues that any statement he made was tainted by the illegal search and was, therefore, fruit of the poisonous tree. (Id. at 3) In supplemental suggestions, defendant argues that the "no-knock" search violated defendant's right to be free from unreasonable search and seizure. (Supplemental Suggestions in Support of Motion to Suppress Evidence and Statements at 4)

A.   Probable Cause

In support of his probable cause argument, defendant contends that the search warrant affidavit failed to state facts sufficient to support a finding of probable cause because the affidavit omitted the fact that the confidential source did not have a history of reliability. (Supplemental Suggestions in Support of Motion to Suppress Evidence and Statements at 3) Specifically, defendant argues:

> The affidavit in this case is completely devoid of information pertaining to any history of reliability of the confidential source and must fail on that circumstance as a basis for finding probable cause. It simply recites statements made by an anonymous person when the police responded to a "call for service" at the residence on October 23, 2005. The anonymous person told the officer that defendant was a drug dealer, defendant had a cousin named Ron who had removed a shoebox filled with a large amount of crack cocaine just before the officers arrived, and that defendant kept large amounts of powder cocaine at the premises. The officers did recover some crack cocaine from the "exterior front porch" while they were there, but the affidavit does not attribute that information to the confidential source.
>
> These circumstances do not provide a basis for a determination of probable cause based in whole or in part upon the statements of the confidential source. As such, the search violated defendant's Fourth Amendment right to be free from unreasonable search and seizure. Not only does the affidavit fail to recite a track record of reliability for the confidential source, there was no corroboration of the facts alleged in the source's statements. The government will point to the recovery of crack cocaine from the exterior front porch as corroboration of the CI's statements.

8

Case 4:05-cr-00422-DW   Document 31   Filed 03/28/06   Page 8 of 16

> However, the source stated only that defendant kept *powder* cocaine at the residence with no mention of crack cocaine. The source did state that defendant's cousin, "Ron," left the premises with crack cocaine in his possession before the police arrived. There was no mention by the source defendant possessed crack cocaine, only that defendant was a "drug dealer." From the facts asserted in the affidavit, it is reasonable to infer that the crack cocaine found on the front porch was evidence of a crime committed by "Ron," who had left the premises, but not of a crime committed by defendant, inside the premises. Therefore, the recovery of crack cocaine from the front porch fails to corroborate the statements of the anonymous source and fails to support a finding of probable cause.

(Supplemental Suggestions in Support of Motion to Suppress Evidence and Statements at 3-4)

The United States Supreme Court has set forth the following with respect to what is required for a valid search warrant:

> The Fourth Amendment requires that search warrants be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." ... [T]his Court has interpreted [these words] to require only three things. First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that "the evidence sought will aid in a particular apprehension or conviction" for a particular offense. Finally, "warrants must particularly describe the 'things to be seized,'" as well as the place to be searched.

Dalia v. United States, 441 U.S. 238, 255 (1979)(citations omitted).

The Supreme Court has recognized that, because of the Constitution's "strong preference for searches conducted pursuant to a warrant, an issuing judge's "determination of probable cause should be paid great deference by reviewing courts." Illinois v. Gates, 462 U.S. 213, 236 (1983). The Court went on to state:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [it], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... concluding" that probable cause existed.

Id. at 238-39.

As set forth in United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993), "[t]he core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable. Information may be sufficiently reliable to support a probable cause

9

finding ... if it is corroborated by independent evidence." See also Illinois v. Gates, 462 U.S. 213, 244 (1983)(information from untested informant can rise to level of probable cause when supplemented by sufficient corroboration through independent police work); United States v. Lucca, 377 F.3d 927, 933 (8th Cir. 2004)(information from confidential informant is sufficiently reliable if it is corroborated by other evidence).

In the instant case, the officers conducted additional investigation which produced independent evidence that corroborated the confidential informant's information. First, while at the residence on the call for service on October 23, 2005, the officer recovered 1.3 grams of cocaine base from the exterior front porch of the residence. (See Fact No. 1, supra) This recovery supports the confidential informant's information that defendant Jones had his cousin remove crack cocaine from the residence prior to the officer's arrival as it suggests that Jones' cousin dropped a portion of the crack cocaine as he was carrying it out. At the very least, the recovery ties the presence of crack cocaine to the residence. Next, the officers conducted an independent investigation by conducting a trash pull. (See Fact No. 1, supra) This trash pull corroborated the confidential informant's information in that (1) it tied defendant Jones to the residence in that he received mail there; (2) various items, such as empty cigar boxes containing loose tobacco, zip-lock bags which had been washed out, heat sealed bags with torn corners and a bag containing a dryer sheet, were discovered which are consistent with the packaging of illegal narcotics; and (3) substances which field-tested positive for the presence of the active ingredient in marijuana and for the presence of cocaine were discovered.[1]

In addition to the information provided by the confidential informant, the recovery of 1.3 grams of cocaine base from the exterior front porch of the residence and the recovery of the various

---

[1] The evidence gleaned from the garbage search alone might be sufficient to establish probable cause to believe that illegal drugs would be found in the residence. See United States v. Briscoe, 317 F.3d 906, 908 (8th Cir. 2003)(marijuana seeds and stems found in garbage were sufficient stand-alone evidence to establish probable cause); United States v. Sumpter, 669 F.2d 1215, 1221 (8th Cir. 1982)("it is well established that affidavits based almost entirely on the evidence garnered from garbage may be sufficient to support a finding of probable cause").

incriminating items in the trash, the Affidavit contains information that on April 23, 2004, and June 3, 2005, complaints were received that defendant Jones was selling narcotics from the residence at 7110 S. Flora Avenue. (See Fact No. 1, supra)

The Court finds that the Affidavit was adequate to support the issuing judge's determination of probable cause.

    B.    "No-Knock" Search

Defendant Jones sets forth the following as support for his argument that evidence seized should be suppressed because the officers conducted a "no-knock" search:

> In this case there is no evidence of exigent circumstances presented to the issuing court sufficient to support a "no-knock" search warrant. The affidavit primarily alleged a "threat to officer entering the residence, upon execution of the search warrant," and added that "past experience" reveals that "small quantities of narcotics can be easily disposed of prior to law enforcement officers entering the residence to execute search warrants." (Ex. 1, p. 3).
>
> The "threat to law enforcement officers" was based upon an anonymous tip lodged on April 23, 2004, a year and ½ prior to the execution of the search warrant, which indicated that defendant had weapons inside the residence. There was no contemporaneous evidence in the affidavit that defendant possessed weapons on November 8, 2005. In addition, the assertion that defendant was "flagged as a violent offender" and was "charged with Aggravated Domestic Violence Assault of 4-04-04" was false.[2] Defendant was charged and convicted of Violation of an Order of Protection which did not involve acts of violence.[3]
>
> There was also no risk of destruction of evidence to support a "no-knock" search warrant. The anonymous source stated only that defendant kept "large amounts of powder cocaine" in the residence. There was no assertion in the affidavit that numerous persons had visited the residence such that would indicate drug dealing, nor was there any indication of any surveillance upon the premises at all. There was no evidence offered and it is not reasonable to conclude that "large amounts of powder cocaine" could be quickly disposed of, such as to require a no-knock search warrant that is presumptively unreasonable under the Fourth Amendment.

(Supplemental Suggestions in Support of Motion to Suppress Evidence and Statements at 5-6)

---

[2] Defendant Jones presented no evidence at the hearing to support these contentions.

[3] While Government's Exhibit 5 does reflect a conviction for a violation of an order of protection, that offense took place on May 21, 2004. The Statement of Probable Cause in that case stated "DEFENDANT JONES has 3 priors for Domestic Violence and poses a continuing threat to the victim's safety."

Under the Fourth Amendment to the United States Constitution, police officers executing a search warrant must "knock on the door and announce their identity and purpose before attempting forcible entry." Richards v. Wisconsin, 520 U.S. 385, 387 (1997). However, if the police have a "reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence," the officers are relieved from the constitutional requirement of knocking and announcing their presence. Id. at 394. While there is no statute in Missouri expressly authorizing "no-knock" search warrants, the courts have outlined the following standard for "no-knock" entries:

> In order to justify a "no knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would allow the destruction of evidence. This standard, as opposed to a probable cause requirement, strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries. This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.

State v. Ricketts, 981 S.W.2d 657, 660 (Mo. Ct. App. 1998)(citations omitted).

Applying the law set forth above, the Court finds that the officers did have a reasonable suspicion that knocking and announcing their presence would be dangerous based on the fact that previous complaints had been received that Dewayne Jones was selling narcotics from the residence and that he had weapons inside the residence and that Jones was flagged through the computer system as being a violent offender. The Court will not second-guess this decision regarding officer safety.

Further, the officers had a reasonable suspicion that knocking and announcing their presence would allow the destruction of evidence. "It is well-settled that cocaine is a type of drug that is easily destroyed." United States v. Mack, 117 F.Supp.2d 935, 942 (W.D. Mo. 2000).

The Court finds that the officers' conduct in obtaining and executing the "no-knock" warrant complies with Missouri law and the Fourth Amendment.

C. The Leon Good Faith Exception

Even if probable cause did not exist for issuance of the "no-knock" warrant (which this Court does not believe to be the case), the Leon good faith exception would support the admissibility of the evidence seized pursuant to the warrant since it appears that the officers executing the warrant were acting in "objectively reasonable reliance" on a warrant issued by a neutral judge. See United States v. Leon, 468 U.S. 897, 922 (1984); United States v. Murphy, 69 F.3d 237, 241 (8th Cir. 1995), cert. denied, 516 U.S. 1153 (1996). Judge Sauer found probable cause for the issuance of the warrant.

The Eighth Circuit has set forth the following with respect to exceptions to good faith reliance:

> Ordinarily, a police officer cannot be expected to question a judge's probable cause determination. Suppression is an appropriate remedy if the judge, in issuing the warrant, was misled by information in the affidavit that the affiant knew or would have known it was false except for the affiant's reckless disregard for the truth. Evidence should be suppressed only if the affiant-officer could not have harbored an objectively reasonable belief in the existence of probable cause.

United States v. Murphy, 69 F.3d 237, 241 (8th Cir. 1995)(quoting United States v. Gibson, 928 F.2d 250, 253-54 (8th Cir. 1991)). Stated another way, there are four "exceptions" wherein reliance upon an invalid search warrant is per se unreasonable: (1) the affiant misled the judge by including information in the affidavit that the affiant knew was false or would have known was false, except for a reckless disregard for the truth; (2) no reasonably well-trained officer could rely on the warrant, as it was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; (3) the judge wholly abandoned his neutral and detached position and acted as a rubber stamp; or (4) the warrant itself is so facially defective that the executing officer cannot presume its validity. See United States v. Leon, 468 U.S. 897, 922-23 (1984).

The "exceptions" to good faith reliance do not apply in this case. No evidence was presented to suggest that the officers misled Judge Sauer by omitting information from the affidavit and/or by including information in the affidavit that they knew to be false or would have known to be false, except for a reckless disregard for the truth. No evidence was presented to suggest that Judge Sauer abandoned her neutral and detached position or acted as a rubber stamp. Further, the Court cannot

13

find that the affidavit was so lacking any indicia of probable cause or the warrant so facially defective that the executing officers could not presume the warrant's validity.

        D.      <u>Search Of Defendant's Person</u>

Defendant Jones claims that the search of his person was incident to an arrest based upon items seized during the unlawful search of the premises. As set forth above, contrary to defendant's argument, the officers did not improperly execute the search warrant for 7110 South Flora. Therefore, the search of defendant's person incident to an arrest based upon items seized during the search of defendant's residence was proper.[4]

        E.      <u>Consent To Search Automobile</u>

Not every search must be made pursuant to a warrant. The Fourth Amendment prohibits only unreasonable searches and seizures. See <u>South Dakota v. Opperman</u>, 428 U.S. 364, 372-73 (1976). A search that is conducted pursuant to a valid consent does not violate the Constitution. See <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 219 (1973); <u>United States v. Ramey</u>, 711 F.2d 104, 107 (8th Cir. 1983); <u>United States v. Matthews</u>, 603 F.2d 48, 51 (8th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1019 (1980). The test in reviewing a consent search is whether, in the totality of the circumstances, the consent was given voluntarily and without coercion. See <u>United States v. Palacios-Suarez</u>, 149 F.3d 770, 772 (8th Cir. 1998); <u>United States v. Barahona</u>, 990 F.2d 412, 417 (8th Cir. 1993); <u>United States v. Turpin</u>, 707 F.2d 332, 334 (8th Cir. 1983); <u>United States v. Dennis</u>, 625 F.2d 782, 793 (8th Cir. 1980). In <u>United States v. Sanchez</u>, 156 F.3d 875 (8th Cir. 1998), the Eighth Circuit Court of Appeals set forth the following with respect to the relevant circumstances:

> Whether consent is voluntary depends upon the "totality of the circumstances." When evaluating such circumstances, we pay particular attention to the characteristics of the person giving consent and to the encounter from which the consent arose. Relevant characteristics of the consenting party include age, intelligence and education; chemical intoxication (if any); whether the individual was

---

[4] The Court notes that defendant Jones was placed under arrest for the active Kansas City bench warrant as well as for possession of controlled substances which were discovered within the residence. (<u>See</u> Fact Nos. 4 and 12, <u>supra</u>) Even if the search of the premises was unlawful, which the Court does not believe to be the case, the officers would have been justified in searching Jones' person incident to his arrest on the outstanding warrant.

14

informed of the right to withhold consent; and whether the suspect generally understood the rights enjoyed by those under criminal investigation. To assess the environment surrounding the consent, we consider the length of time that the suspect was detained and questioned; whether the police intimidated the suspect; whether the suspect relied upon promises or misrepresentations made by the police; whether the suspect was in custody when the consent was given; whether the encounter occurred in a public or secluded place; and whether or not the suspect objected to the search.

Id. at 878 (citations omitted).

Officer Farris asked defendant Jones if he would mind if the officers searched the vehicles in the driveway and Jones responded that he did not care and gave his verbal consent to do so. (See Fact No. 7, supra) Defendant Jones was born in 1970. (See Fact No. 1, supra; Indictment) There is no indication that Jones was mentally deficient or unable to exercise a free choice. There is no indication that Jones was intoxicated or under the influence of drugs. Rather, Officer Farris and Sergeant Cesena both testified that they did not believe Jones to be under the influence of alcohol or drugs. (See Fact No. 7, supra) Defendant Jones told Officer Farris where to find the keys to the green Lexus. (See Fact No. 8, supra) Jones also showed Officer Farris how to deactivate the alarm on the car so that Farris would not set the alarm off. (Id.) At no point did Jones tell Officer Farris that he did not want him to go into the vehicle. (Id.) Sergeant Cesena also testified that Jones did not object in any way to the search of the vehicle. (Id.) At no point did Officer Farris make any promises to Jones in exchange for his cooperation. (Id.) Sergeant Cesena also testified that he made no promises to Jones. (Id.) Officer Farris, Officer Hendershot and Sergeant Cesena each testified that defendant Jones was very cooperative. (See Fact Nos. 6 and 7, supra) At no point did Officer Farris (or any other officer) threaten Jones to make him cooperate. (See Fact No. 8, supra) Defendant Jones was experienced in the criminal justice field, having convictions for violation of an adult abuse order, for trafficking narcotics and for sale of a controlled substance. (See Fact No. 17, supra)

The Court finds that the Government met its burden in establishing that defendant Jones' consent to search was freely and voluntarily given and not the result of duress or coercion.

F. <u>Statement</u>

Case 4:05-cr-00422-DW   Document 31   Filed 03/28/06   Page 15 of 16

Defendant Jones claims that the statement he gave after he was taken into custody was fruit of the poisonous tree and should, therefore, be suppressed. As set forth above, contrary to defendant's argument, the officers did not improperly execute the search warrant for 7110 South Flora. Therefore, any statement made by defendant could not be considered a fruit of the poisonous tree.

Prior to being interviewed, defendant Jones read his Miranda rights. (See Fact No. 15, supra) Jones stated that he understood his rights and signed the waiver form. (Id.) Defendant's request that the Court suppress any statements he made after the search of 7110 South Flora Harrison must be denied.

## IV. CONCLUSION

For the reasons set forth above, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Jones' Motion to Suppress Evidence and Statements (doc #18).

Counsel are reminded they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE